HAR–WIN, INCORPORATED,
Plaintiff-Appellant,

v.

CONSOLIDATED GRAIN & BARGE
CO., and Behimer & Kissner, Inc.,
Defendants-Appellees.

No. 85–3593.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 18, 1986.

Chaffe, McCall, Phillips, Toler & Sarpy, James R. Holmes, New Orleans, La., for plaintiff-appellant.

Maurice C. Hebert, Jr., Michael E. Guillory, New Orleans, La., for defendants-appellees.

Before CLARK, Chief Judge, WIL-
LIAMS and HIGGINBOTHAM, Circuit
Judges.

JERRE S. WILLIAMS, Circuit Judge:

This is an appeal brought under both
admiralty and diversity jurisdiction. Ap-
pellant Har-Win, Inc. entered into three
contracts with appellee Behimer & Kissner,
Inc.[1] The first contract was entered into
on November 11, 1980. It was a contract
of affreightment in which Har-Win agreed
to provide two barges each half-month
through the calendar year 1981 to carry
freight for Behimer & Kissner, and in re-
turn Behimer & Kissner agreed to pay
freight rental to Har-Win.

The second contract was entered into on
March 27, 1981. Har-Win agreed to pur-
chase fifteen sets of fiberglass barge cov-
ers from Behimer & Kissner at a cost of
$12,500 per set. This contract was com-
pletely separate from the 1980 contract of
affreightment. Har-Win was billed for all
fifteen sets of barge covers on June 1,
1981. On December 18, 1981, Har-Win
made payment on ten of the fifteen sets of
covers. Har-Win failed to pay the remain-
ing $62,500 representing the outstanding
price of the remaining five sets of barge
covers.

On May 12, 1981, Har-Win and Behimer
& Kissner entered into a new contract for
affreightment replacing the 1980 contract.
This contract provided that Har-Win would
provide four barges each half-month rather
than two barges. The parties proceeded
under this new contract of affreightment in
September, 1981. Har-Win was to continue
to receive freight rental for carrying
freight for Behimer & Kissner.

Behimer & Kissner attempted to obtain
the $62,500 owed to it by Har-Win for the
barge covers, but was unsuccessful. In
March 1983, Behimer & Kissner offset the

$62,500 against freight bills it owed under
the affreightment contract.

Har-Win brought this action complaining
that the $62,500 was improperly deducted.
Har-Win admitted that it ostensibly had no
cause of action under the contracts as writ-
ten, but asserted that it should be allowed
to present parol testimony to show altered
meaning to the agreements in its favor.
The parties agreed to trial before a magis-
trate. The magistrate sustained appellees'
objection to introduction of parol evidence
with regard to the contracts. The magis-
trate held that the contracts were not am-
biguous, and that any issue regarding am-
biguity of the contracts was not included in
a pretrial order which had limited the is-
sues to be tried in this suit.

Har-Win also attempted to argue that
the offset taken by Behimer & Kissner was
improper because the freight charges were
owed to certain partnerships rather than to
Har-Win. Appellees responded that this
issue had been dismissed during discovery
many months before trial by agreement of
all counsel, and was not raised as an issue
in the pretrial order. The magistrate
found that this issue was not listed in the
pretrial order and was not properly before
the court. At the close of a bench trial, the
magistrate granted appellees' motion for
involuntary dismissal of all claims.

On appeal to this Court, Har-Win urges
that the magistrate erred in: (1) refusing
to admit parol testimony regarding the con-
tracts; and (2) refusing to allow testimony
concerning whether the offset was proper-
ly taken because the freight charges were
owed to partnerships and not to Har-Win.
Finding no merit in either of these conten-
tions, we affirm.

I.

Har-Win asserts that the magistrate
erred in excluding parol testimony regard-
ing the agreements. The agreements in
the present case were contracts of af-
freightment and for the furnishing of
equipment for vessels. These agreements
are considered maritime contracts. *North
Pacific S.S. Co. v. Hall Bros. Marine Ry.*

---

1. Behimer & Kissner is a subsidiary of appellee Consolidated Grain & Barge Co.

& *Shipbuilding Co.*, 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510 (1919); 1 Benedict on Admiralty §§ 181–185 (1984). Because this case concerns the interpretation of maritime contracts, federal admiralty law rather than state law provides the parol evidence rule which must be applied. *Battery Steamship Corp. v. Refineria Panama*, 513 F.2d 735, 738–39 (2d Cir.1975); *see also Kossick v. United Fruit Co.*, 365 U.S. 731, 741, 81 S.Ct. 886, 893, 6 L.Ed.2d 56 (1961) (holding that admiralty law, not state statute of frauds, governed oral maritime contract); Dyer, *The Jury on the Quarterdeck: The Effect of Pleading Admiralty Jurisdiction When a Proceeding Turns Hybrid,* 63 Tex.L.Rev. 533, 537 n. 17 (1984) (federal admiralty law governs maritime contracts even in hybrid proceedings).

In admiralty law, the parol evidence rule is generally stated as follows:

> When two parties have made a contract and have expressed it in a writing to which they have both asserted as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Battery Steamship Corp.*, 513 F.2d at 738 (quoting A. Corbin, *Contracts* § 573).

█ The contracts in the present case consisted of letters between the parties. The contract for sale of the barge covers provided for the sale to Har-Win of 15 barge covers at $12,500 each. The contract further provided that Har-Win would insure the covers "until such time (estimated mid-summer) when full payment on the purchase is made." Har-Win wished to introduce parol evidence that the parties intended that the barge covers were not to be paid for until they were actually put in use. Har-Win asserts that the barge cover purchase contract is ambiguous on this point because the phrase "until such time (estimated mid-summer) when full payment on the purchase is made" provides for no definite time of payment.

The 1981 contract of affreightment provided for "freight loadings" at a specified rate. Paragraph one of that contract provided that "[t]he current grain affreightment agreement between Har-Win, Inc. and Behimer & Kissner, Inc. ... is now null and void per mutual agreement with no penalties or payments to either party." Har-Win urges that the term "per mutual agreement" in the contract of affreightment is ambiguous and refers to the alleged agreement not to charge Har-Win for the barge covers until they were put in use.

The magistrate found that the parties intended these contracts to be the final expression of their agreement, and that the contracts were neither incomplete nor ambiguous. We agree with the magistrate. The alleged oral agreement is properly seen as constituting a condition which Har-Win seeks to impose on the written contract. Har-Win is claiming that its performance under the written contract—i.e., payment—was subject to an oral condition —i.e., that the covers first be put into use. Where writings intended by the parties to be a final expression of their agreement call for an unconditional sale of goods, parol evidence that the buyer's obligations are conditional is inconsistent with the written document and must be excluded. *Luria Bros. & Co. v. Pielet Bros. Scrap Iron*, 600 F.2d 103, 111 (7th Cir.1979); A. Corbin, *Contracts* § 592. The magistrate therefore properly excluded the evidence.

The substitute affreightment contract does not change this result. With regard to the allegation that the phrase "per mutual agreement" in the affreightment contract is ambiguous, it is obvious that giving the phrase its ordinary and plain meaning both parties agreed to cancel the 1980 contract of affreightment without any penalties. *See Robin v. Sun Oil Co.*, 548 F.2d 554, 557 (5th Cir.1977) (words in contract must be given their ordinary and plain meaning). In addition, the affreightment contract is totally separate from and makes no reference to the barge cover contract. There simply is no basis in the record for concluding that the phrase "per mutual agreement" in the affreightment contract has any reference to the completely different contract concerning the sale of barge covers.

We note that Har-Win's alleged oral agreement to defer payment until the covers were put in use paints a quite bizarre and unlikely scenario. Har-Win entered into the contract for purchase of the barge covers in March 1981. Behimer & Kissner took the offset for the unpaid barge covers two years later, in March 1983. Har-Win states in its brief that the barge covers have *still* not been put into use. It is ridiculous to suppose that Behimer & Kissner would agree to forego payment indefinitely until, years or decades later, the barge covers were put into use. Further, although the time of payment in the contract ("estimated mid-summer [1981]") was not specific,[2] it certainly contemplated that payment would be made sometime before several years had elapsed.

The contracts contain no mention of nor reference to any side agreement concerning when the barge covers were put in use, nor is any such agreement necessary to make the contracts complete or unambiguous. The magistrate properly excluded the evidence of the alleged oral condition that payment would not be due until the barge covers were put into use.[3]

## II.

■ Har-Win asserts that the magistrate erred by preventing it from introducing evidence that Behimer & Kissner improperly deducted the $62,500 because those monies were owed to certain partnerships rather than to Har-Win. If Har-Win's contention is accepted as true, however, then Har-Win has no standing to litigate that claim. Har-Win obviously has no standing to assert claims based on breaches of contracts in which it was not involved. *American Fletcher Mortg. Co. v. First American Inv. Co.*, 463 F.Supp. 186, 196 (N.D.Ga. 1978). The magistrate therefore did not err in excluding evidence regarding whether the monies from the contract for affreightment were owed to parties other than Har-Win.[4]

■ In addition, we agree with the magistrate that this testimony was inadmissible because it was not included in the pretrial order. The pretrial order contains nothing regarding any defense concerning monies owed to partnerships under the contract of affreightment, and in fact states the opposite.[5] If a claim or issue is omitted from the pretrial order it properly may be considered as waived. *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir.1982).[6]

We reject Har-Win's contentions that evidence was improperly excluded, and we affirm the magistrate's dismissal of its claims.

AFFIRMED.

---

2. In fact, payment for the ten covers Har-Win properly acquired was not received until December 1981.

3. In view of our holding that this evidence was inadmissible under the parol evidence rule, we need not discuss the magistrate's holding that the evidence was inadmissible because this issue was not included in the pretrial order.

4. Of course, if it is accepted as true that the partnerships are separate entities from Har-Win, then the partnerships are not precluded from bringing suit on their own behalf because of this judgment. Just as Har-Win has no right to bring claims on behalf of third parties, Har-Win also has no right to waive claims on behalf of third parties.

5. For example, the uncontested material facts in paragraph 7(b) of the pretrial order provide: Defendants, (Behimer & Kissner, Inc.) deducted $62,500 from freight charges owed to *plaintiff,* (Har-Win, Inc.) which was represented to be and did in fact equal the cost of five sets of covers. (emphasis added).
   Additionally, the plaintiff's summary of material facts states: "Behimer & Kissner subsequently deducted the purchase price of the five sets of barge covers from other monies owed to *Har-Win, Inc. . .*" (emphasis added). There is no mention anywhere in the pretrial order of any issue regarding the proceeds from the contract of affreightment being owed to partnerships.

6. The pretrial order in the present case gave ample notice that it would be strictly construed. The order provided:
   The pre-trial has been formulated at a conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court or by

order of the Court to prevent manifest injus-    tice.