TRACY WHELIHAN *vs.* EUGENE MARKOWSKI & another.[1]

No. 92-P-1679.

Hampden. December 6, 1993. - August 25, 1994.

Present: BROWN, PERRETTA, & JACOBS, JJ.

*Consumer Protection Act*, Landlord and tenant, Damages, Offer of settle-
ment, Demand letter. *Damages*, Consumer protection case. *Landlord
and Tenant*, Multiple damages, Consumer protection. *Practice, Civil*,
Attorney's fees.

A Housing Court judge correctly determined that a professional building
manager's failure to repair and maintain the rear entry door of a resi-
dential unit in compliance with the State Building and Sanitary Codes,
as a result of which a tenant sustained a personal injury, was a wilful
and knowing violation of G. L. c. 93A, for which damages were appro-
priately multiplied. [210-213] BROWN, J., dissenting.
In a claim brought under G. L. c. 93A, the judge correctly concluded on
the record before him that the defendants' offer of settlement was not
reasonable in relation to the plaintiff's injury. [213-215]
Service of a demand letter prerequisite to commencing an action under
G. L. c. 93A, § 9, met the requirements of that statute, where it was
sent to the defendants, who resided in Connecticut, in care of their
Massachusetts attorney, who had been counsel of record for ten
months. [215]
A prevailing plaintiff in a civil action under G. L. c. 93A was to be allowed
reasonable attorney's fees for the defendants' appeal to this court. [215]

CIVIL ACTION commenced in the Hampden County Divi-
sion of the Housing Court Department on January 10, 1991.

The case was heard by *William H. Abrashkin*, J.

*Thomas M. Elcock* for the defendants.

*William J. Cass* for the plaintiff.

PERRETTA, J. One night about two months after moving
into her apartment, the plaintiff went to lock the rear door to
her unit. Because the door tended to stick, it had to be lifted

---

[1]Michelle Markowski.

and pushed before it would close tightly. To force the door shut so that it could be locked, the plaintiff grasped the doorknob with her left hand and pushed against the door with her right hand. A major portion of the upper half of the door contained a glass panel. Although she was trying to push against the wood above the doorknob, her hand pressed against the glass. The glass shattered, and the plaintiff's arm went through the jagged pane. She brought an action in the Housing Court seeking damages for the negligent maintenance of her apartment, breach of the implied warranty of habitability, and violation of G. L. c. 93A. The jury returned special verdicts in her favor on the negligence and warranty counts. Having reserved the c. 93A claim for findings of his own, the Housing Court judge found that the defendants' improper installation of nonsafety glazing materials in a hazardous location, the door, was a wilful and knowing violation of the statute and awarded the plaintiff treble damages.[2] The defendants' principal claim on appeal is that there was no basis for an award of multiple damages. They also argue that they were never served with a demand letter.[3] We affirm the judgment.

1. *The violation.* We relate the judge's findings on the c. 93A violation. In addition to the building in which the plaintiff resided, the defendants owned other rental property and were in the residential rental business. Their property, or at least the building here in issue, was managed by Ralph McNamara, an experienced professional building manager who also managed property for the Chicopee housing authority.[4] Sometime in April of 1989, but prior to renting the unit to the plaintiff, McNamara repaired the cracked glass in the

---

[2] The jury awarded the plaintiff $15,000 on each of her claims, but the negligence award was reduced on the jury's finding that she had been forty percent negligent. The Housing Court judge found the plaintiff's actual damages to be in the amount of $25,280, which he then trebled. Consistent with *Wolfberg* v. *Hunter*, 385 Mass. 390, 400-401 (1982), the judgment provided for one recovery.

[3] The defendants make no argument in respect to the jury's verdicts.

[4] The parties stipulated prior to trial that all the actions of McNamara were to be considered binding upon the defendants for purposes of this action. The defendants do not dispute the Housing Court judge's statement

rear door by replacing the entire panel with ordinary window glass. From the time the plaintiff commenced her tenancy in May of that year until the night of her accident two months later, the condition of the door violated the State Sanitary and Building Codes.

Because the rear door could not be fully closed without the use of excessive force, it did not comply with the State Sanitary Code requirement that it be weathertight. See 105 Code Mass. Regs. § 410.501(B)(2) (1986). Further, and as made clear by both G. L. c. 143, § 3T, and the State Building Code, 780 Code Mass. Regs. § 857.5.6.1(1) (1980), the rear door was a "hazardous location" requiring the use of only "safety glazing material." Any doubt about the importance of this requirement is quickly dispelled upon a reading of G. L. c. 143, § 3V, as inserted by St. 1971, c. 837, § 1: "Whoever knowingly sells, fabricates, assembles, glazes, installs, consents or causes to be installed glazing materials other than safety glazing materials in, or for use in, any hazardous location shall by punished by a fine of not less than five hundred nor more than ten thousand dollars, or by imprisonment in a jail or house of correction for not more than one year, or both. . . ."

Although the plaintiff's medical treatment was not extensive, she sustained severe lacerations to her right forearm. She has a five percent permanent disability of her right, and dominant, hand as well as scarring on her wrist and forearm. There is also an unsightly indentation where the flexor tendon of her wrist adheres to the scar on her forearm. She experiences weakness and clumsiness in her right hand which impairs her ability to perform routine and work-related activities. Previously a cosmetologist, the plaintiff was attending school at the time of trial in preparation for a career change.

*2. Treble damages.* Damages were trebled by the Housing Court judge on the following basis: "Where a professional building manager actually knows that he is required to make

---

that "[e]ven absent such a stipulation, standard principles of agency law would yield the same result."

repairs in conformity with the State Building Code, but nevertheless does not take any steps whatsoever to inform himself as to Code requirements bearing an immediate relationship to the safety of those using the building, this remedy is appropriate."[5] Protesting the award of multiple damages, the defendants argue that the "failure of the property manager to consult the code prior to repairing the window" constitutes negligence rather than a wilful and knowing violation of c. 93A. See *Wang Labs., Inc.* v. *Business Incentives, Inc.,* 398 Mass. 854, 858 (1986). Liability for multiple damages under c. 93A cannot be grounded upon a negligent act, *ibid,* or "relatively innocent violations of the statute's substantive provisions." *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 853 (1983).

Although the property manager might not have wished the plaintiff harm, he intentionally put glass which he knew to be windowpane glass in a door that he knew to be one of the unit's two means of ingress and egress. Even if the risk of physical harm were not apparent to him, he would have known that the door was a hazardous location requiring use of safety glazing materials had he chosen to familiarize himself with the State Building Code.[6] By instead choosing to remain uninformed about building code requirements while replacing the glass in the door, the property manager con-

---

[5]The dissent disagrees with the trial judge's description of McNamara as a "professional building manager" chargeable with knowledge that repairs must be made in compliance with the State Building Code. However, the defendants do not and cannot argue that this statement lacks evidentiary support. McNamara testified that, in addition to managing property for various private owners, he also had been the superintendent of maintenance for the Chicopee housing authority for over seventeen years. He acknowledged that, although he was aware of the fact that building repairs had to be done in compliance with the requirements of the State Building Code and the State Sanitary Code, he was familiar with neither.

[6]There is no force to the defendants' argument that even had he been familiar with the State Building Code, he could not have known of the need for use of safety glazing material in the door. Both G. L. c. 143, § 3T, and 780 Code Mass. Regs. § 857.5.6 (1980) make specific reference to standard ANSIZ - 97.1, the standard promulgated by the American National Standards Institute in respect to glazing material in hazardous locations.

sciously chose to disregard the immediate and direct risk to the plaintiff's physical safety. Such conduct not only constitutes a "willful or knowing" violation of c. 93A, see *Montanez* v. *Bagg*, 24 Mass. App. Ct. 954 (1987), and cases therein cited (especially *Computer Sys. Engr., Inc.* v. *Qantel Corp.*, 571 F. Supp. 1365, 1375 [D.Mass. 1983], aff'd, 740 F.2d 59, 68 [1st Cir. 1984]), it is conduct which is sufficiently egregious to justify treble damages. See *McGrath* v. *Mishara*, 386 Mass. 74, 85 (1982); *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. at 853, 857.[7]

3. `The offer of settlement.* Because the Housing Court judge found the violation of c. 93A to be wilful and knowing, it was necessary for him next to determine whether the defendants had limited their "maximum potential damages by making a reasonable offer of settlement," *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 803 (1976), that is, whether the defendants tendered relief which was "reasonable in relation to the injury actually suffered." G. L. c. 93A, § 9(3) (as inserted by St. 1969, c. 690).

In making written demand upon the defendants, the plaintiff provided far more information than that deemed essential in *Cassano* v. *Gogos*, 20 Mass. App. Ct. 348, 350-351 (1985). The injuries for which she sought treble damages,

---

[7]The dissent proceeds on the basis that McNamara's violation of c. 93A was his failure to know "all" the State Building Code requirments applicable to the repair he undertook to make and was, therefore, negligence rather than a *"knowing* disregard" (emphasis original). Treble damages were not, however, based upon McNamara's failure to know that use of safety glazing material in the door was required by the State Building Code. Damages were trebled because of McNamara's actual knowledge of the applicability of the State Building Code, the nature of the repair undertaken and the somewhat obvious risk of immediate physical harm if done incorrectly, and his decision to undertake the repair without first familiarizing himself with mandatory State Building Code requirements. "The 'willful or knowing' requirement of §9(3), goes not to actual knowledge of the terms of the statute, but rather to knowledge, or reckless disregard, of conditions in a rental unit which, whether the defendant knows it or not, amount to violations of the law. See *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 627 (1978). Cf. *Grossman* v . *Waltham Chemical Co.*, 14 Mass. App. Ct. 932, 934 (1982)." *Montanez* v. *Bagg*, 24 Mass. App. Ct. at 956.

attorneys fees, and costs were specific: "Ms. Whelihan sustained a severe laceration to her right forearm volar surface towards the ulnar side, junction middle and distal thirds, which resulted in permanent impairment to the sublimis function of her ring finger and adherence of the sublimis on the ring and long fingers at the site of the scar. She has a permanent scar which measures nine centimeters. She has sustained a permanent 30% loss of function to her middle finger and a permanent 5% loss of function of the hand overall and must now live with an unattractive scarring of the forearm and weakness in the use of her hand."

Deciding that the information and materials then available to them did not "substantiate" the plaintiff's assertions and that "Chapter 93A is not applicable to this case," the defendants offered the plaintiff $3,000 "in full and final settlement of this dispute." The Housing Court judge found that the defendants "knew or should have known that the plaintiff had suffered a permanent disability for which $3,000 could hardly be viewed as fair compensation."

There is no requirement that a demand letter be accompanied by documentation or other proof of the assertions therein made. Further, the defendants in fact had a greater opportunity for making a more informed offer than that normally provided by the thirty-day time limit for a response to a demand. As earlier noted, the plaintiff's claim under c. 93A was asserted by amendment to her complaint for negligence and breach of warranty. That complaint, which sought damages for the same injury as alleged in the additional claim, had been pending for almost a year and discovery had been ongoing. The only additional discovery obtained by the defendants after amendment of the complaint was the report of a doctor who, on the defendants' assented-to motion, conducted an independent medical examination of the plaintiff. That report contained no new information. Rather, it repeated precisely those injuries and losses which the plaintiff had described in her demand letter.

"Whether an offer is reasonable is normally a question of fact . . . which must be determined in light of the terms of

the demand and all the attendant facts and circumstances." *Patry* v. *Harmony Homes, Inc.,* 10 Mass. App. Ct. 1, 6 (1980), citing *Kohl* v. *Silver Lake Motors, Inc.,* 369 Mass. at 799 ("A determination of reasonableness normally is a question of fact. We think that a seller asserting the protection of the statutory limitation of damages . . . has the burden of proving the reasonableness of the settlement tendered"). On the facts and circumstances before us, we agree with the Housing Court judge's finding and conclusion to the effect that the defendants' offer of settlement was not reasonable in relation to the plaintiff's injury.

4. *Service of the demand letter.* Neither of the well-established purposes of a demand letter (see *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 704 [1975]; *York* v. *Sullivan,* 369 Mass. 157, 162 [1975]; *Spring* v. *Geriatric Authy. of Holyoke,* 394 Mass. 274, 288 [1985]) were frustrated or compromised by the fact that the plaintiff sent her demand to the defendants, who resided in Connecticut, in care of their Massachusetts attorney, who had been active counsel of record for over ten months. We, therefore, conclude that the prerequisite to suit under c. 93A, § 9, was met.

5. *Fees for the appeal.* We allow the plaintiff's request for leave to submit a petition for reasonable attorney's fees for this appeal. The plaintiff is to file her submission with supporting materials, see *Yorke Mgmt.* v. *Castro,* 406 Mass. 17, 20 (1989), as soon as practicable. The defendants are to have twenty calendar days from the date of said filing to respond.

*Judgment affirmed.*

BROWN, J. (concurring in part and dissenting in part). Although I am in agreement, for the most part, with the majority's opinion, I part company on the multiple damages issue. I do not think that on these facts the damages should be enhanced, let alone trebled. Granted, the owner's building manager here had some maintenance experience and was more than a mere on-site representative, but, in my view, it is too great a stretch in these circumstances to elevate him to the

status of "a professional building manager" and one deemed to be fully cognizable with *all* State Building Code "requirements bearing an immediate relationship to the safety of those using the building," thereby providing a basis for a wilful and knowing violation of c. 93A, rather than merely careless conduct. The majority posits liability on the theory of the evidence that the property manager "intentionally" put inappropriate windowpane glass in what he knew to be a "hazardous location," the danger (i.e., "risk of physical harm") of which he ignored by "choosing to remain uninformed about building code requirements." All this is rather much and transforms routine negligence, for which the plaintiff is fully compensated, into a wilful act. I would have thought a wilful act meant something akin to *knowing* disregard. Let us not forget the observation of Holmes that "a dog distinguishes between being stumbled over and being kicked." Holmes, The Common Law 3 (1881).