No. 99-705

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 21

DON PLATH and DEBBY PLATH,
husband and wife,

Plaintiffs, Appellants
and Cross-Respondents,

v.

MARK J, SCHONROCK, d/b/a
PRECISION DESIGN GROUP,

Defendant, Respondent
and Cross-Appellant.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Patrick R. Watt; Jardine, Stephenson, Blewett & Weaver,
Great Falls, Montana

For Respondent:

William J. Gregoire, Stephanie A. Hollar; Smith, Walsh, Clarke &
Gregoire, Great Falls, Montana

Submitted on Briefs:  July 2, 2002

Decided:  February 13, 2003

Filed:

_____
Clerk

**District Court Judge Douglas G. Harkin**, sitting for Justice Patricia O. Cotter, delivered the Opinion of the Court.

¶1     The Plaintiffs, Don Plath and Debby Plath, brought this action in the District Court for the Eighth Judicial District in Cascade County to recover damages for negligence, emotional distress, breach of warranties, breach of contract and violations of the Montana Consumer Protection Act.  Following a jury trial, a verdict in favor of the Plaths was returned on their claims for negligence, breach of warranties and Consumer Protection Act violations.  The Plaths appeal from the District Court's post-verdict decision to deny treble damages, grant only partial attorney fees requested under the Consumer Protection Act, and allowing trial testimony regarding an over-collection claim.

¶2     The Defendant, Mark J. Schonrock, d/b/a Precision Design Group, cross-appealed the District Court's denial of a motion for an $8,000 offset representing a settlement paid to the Plaths by Co-Defendant Ed Boland, d/b/a Boland Drilling Company.  Schonrock also appeals the District Court's submission of a jury instruction that Defendant was involved in a trade or commerce.

¶3     The Appellants raise the following issues on appeal:

       1. Whether the District Court abused its discretion in applying a punitive damage standard in denying the Plaths' motion for treble damages under the Consumer Protection Act.

2

**2. Whether the District Court erred in awarding only partial attorney fees to the Plaths by considering only one factor of the seven-part test adopted by this Court for determining the reasonableness of attorney fees.**

**3. Whether the District Court erred when it denied the Plaths' motion for judgment as a matter of law on their $1,441 over-collection claim.**

**¶4    The Cross-Appellant raises the following issues on appeal:**

**1. Whether the District Court erred when it instructed the jury that Mark J. Schonrock, d/b/a Precision Design Group, was involved in a trade or commerce in his dealings with the Plaths.**

**2. Whether the District Court erred when it denied Schonrock's motion for an $8,000 offset representing the settlement proceeds paid by Co-Defendant Ed Boland, d/b/a Boland Drilling Company.**

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶5    In 1992, the Plaths purchased a six-acre lot located on the outskirts of Great Falls, where they planned to build a house. The Plaths talked with several builders and ultimately decided to hire Mark J. Schonrock, d/b/a Precision Design Group, to build their house. A final contract executed on April 15, 1993, provided for several items, including the placement of a well. The Plaths claimed that during the negotiations held prior to the execution of the final contract, Schonrock made several untrue representations to them, including claims that he had built several houses and had drilled several wells, including deep wells.**

3

¶6 After construction began, Schonrock subcontracted with Boland Drilling Company to drill the water well. The well was drilled in July 1993 and then capped for approximately four months. In late November, Don Plath attempted to obtain a water sample by filling a jug from the front water spigot. While filling this jug, he noticed a foul stench in the water. By late 1995, after completion of several tests on the water and the pipes, and after consulting with water treatment experts and state officials, Don Plath determined that the well water was contaminated with petroleum hydrocarbons.

¶7 The Plaths claim other problems surfaced with regard to Schonrock's construction of their house. Specifically, they contend the wrong-sized faux window grates were placed in the house and thereafter fell out, and a wall gas fireplace switch was coiled up and shoved under the fireplace. The Plaths also allege the back deck was improperly stained, a portion of the ceiling sheet-rock was not taped, textured, or painted, a screen door handle was never fixed, and a shower door leaked.

¶8 This action ensued against the contractor, Mark J. Schonrock, d/b/a Precision Design Group, and the subcontractor, Ed Boland, d/b/a Boland Drilling Company. The Plaths' second amended complaint alleged causes of action against both defendants for negligence, strict liability, infliction of emotional distress, and breach of implied warranties. Prior to the time of trial, the Plaths and Ed Boland, d/b/a Boland Drilling Company, entered into a settlement agreement. Boland was subsequently dismissed from this action. Thereafter, the Plaths filed a third amended complaint adding the Consumer Protection Act claims against Schonrock.

¶9 On September 11, 1998, after a four-day trial, the jury returned a verdict for the Plaths on the negligence, breach of warranties and Consumer Protection Act violation claims. The jury determined that Schonrock did not breach the contract and he did not inflict emotional distress on the Plaths. The jury awarded the Plaths $24,609.70 in damages, of which $22,321.70 was apportioned to the Consumer Protection Act claim.

¶10 After trial, the Plaths moved for a hearing on treble damages and attorney fees under the Consumer Protection Act. The Plaths claimed that they incurred attorney fees in the amount of $116,558, but that they were specifically requesting only $55,000 of that amount. Schonrock moved for an $8,000 setoff on the judgment representing the settlement paid by Ed Boland, d/b/a Boland Drilling Company. The District Court conducted a post-trial hearing on September 29, 1998, and thereafter issued an order denying the Plaths' motion for treble damages under the Consumer Protection Act, partially granting the Plaths' request for attorney fees in the amount of $10,000, and denying Schonrock's motion for an $8,000 set off. This appeal ensued.

## DISCUSSION

¶11 Issue No. 1. Did the District Court abuse its discretion in denying treble damages under the Consumer Protection Act when it used a punitive damage standard?

¶12 Montana's Consumer Protection Act, §§ 30-14-101, et seq., MCA, sets forth the damages available under an individual action brought in district court. The statute specifically provides that a plaintiff may recover "actual damages or $200, whichever is

5

greater. The court may, in its discretion, award up to three times the actual damages sustained and may provide such equitable relief as it considers necessary or proper." Section 30-14-133(1), MCA.

¶13 This Court's standard of review of a district court's discretionary ruling is whether the district court abused its discretion. Jarvenpaa v. Glacier Elec. Co-op., Inc., 1998 MT 306, ¶ 12, 292 Mont. 118, ¶ 12, 970 P.2d 84, ¶ 12 (citing May v. First Nat. Pawn Brokers, Ltd. (1995), 270 Mont. 132, 134, 890 P.2d 386, 388). The test for an abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." C. Haydon Ltd. v. MT Min. Properties, Inc. (1997), 286 Mont. 138, 146, 951 P.2d 46, 51.

¶14 The Plaths argue that the District Court abused its discretion by applying a punitive damage standard to Schonrock's acts and practices in reaching the conclusion that treble damages were not warranted. The Plaths argue that this Court specifically rejected this standard in our decision in T&W Chevrolet v. Darvial (1982), 196 Mont. 287, 293-94, 641 P.2d 1368, 1371-72, wherein this Court held that Montana's Consumer Protection Act does not require a party first prove malice, oppression or fraud to become eligible for an award of treble damages under § 30-14-133, MCA.

¶15 Schonrock responds that the Montana Supreme Court has upheld treble damages only when a defendant has committed an "egregious act" and refers to T&W

**Chevrolet**, wherein the district court awarded treble damages as a result of conduct showing "outright misrepresentation by a car salesman."

¶16    The District Court's decision to deny an award of treble damages was set forth in an order dated September 29, 1999.    The District Court concluded that: "notwithstanding this Court's decision in T&W Chevrolet, . . . there must be some type of culpable behavior on the part of the Defendant to warrant an award of treble damages under the Consumer Protection Act."  The District Court concluded that the trebling of damages under the Consumer Protection Act was:  "in the nature of a punitive or exemplary damage award."  The District Court found that the facts of this case did not warrant assessment of treble damages because the evidence did not support a finding associated with punitive damages, as Schonrock did not act with fraud, malice or other misconduct in the statements he made to the Plaths.

¶17    When Montana's Consumer Protection Act was enacted, it was the Legislature's intent that in construing § 30-14-103, MCA, "due consideration and weight [should] be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C.  45(a)(1)), as amended."  Section 30-14-104, MCA.

¶18    The language of § 30-14-103, MCA, closely resembles that portion of the Federal Trade Commission (FTC) Act codified in 15 U.S.C. § 45(a)(1); under both the federal and state acts, unfair or deceptive acts or practices affecting commerce are deemed unlawful.  The primary purpose of the FTC Act is to protect the public from unfair or

7

deceptive practices by those engaged in trade or commerce.  *See* <u>FTC v. Cinderella Career & Finishing Schools, Inc.</u> (D.C. Cir. 1968), 404 F.2d 1308, 1313.

¶19    One notable difference between the FTC Act, Section 5(a)(1) (15 U.S.C. § 45 as amended) and Montana's Consumer Protection Act is that under the federal act, there is no provision for a private right of action.  *See* <u>Holloway v. Bristol-Myers Corporation</u> (D.C. Cir. 1973), 485 F.2d 986, 997-98, and <u>Carlson v. Coca-Cola Co.</u> (9th Cir. 1973), 483 F.2d 279, 280-81.

¶20    Beginning in the 1960s, all fifty states have adopted consumer protection legislation that was designed to parallel and supplement the FTC Act.  *See* <u>Marshall v. Miller</u> (N.C. 1981), 276 S.E.2d 397, 400 (citing Leaffer and Lipson, *Consumer Actions Against Unfair or Deceptive Acts or Practices: The Private Uses of Federal Trade Commission Jurisprudence,* 48 Geo. Wash. L. Rev. 521 (1980)); Ala. Code §§ 8-19-1, et seq. The FTC encouraged state level legislation because it recognized that the enforcement of the FTC Act's broad Section 5 could not be accomplished without extra-agency assistance.  <u>Marshall,</u> 276 S.E.2d at 400 (citing L. Richie & H. I. Saferstein, Private Actions for Consumer Injury Under State Law – The Role of the Federal Trade Commission, in FTC Trade and Regulation – Advertising, Rulemaking and New Consumer Protection 415 (PLI 1979)).

¶21    Montana's Consumer Protection Act, like many other jurisdictions, allows for a private cause of action based upon violations similar to those found in the FTC Act. Montana's Consumer Protection Act also contains a provision for trebling of actual

damages. Trebling of damages has been determined by other jurisdictions as a way of encouraging private enforcement of their acts because it became clear trebling of actual damages is an economical incentive for a private individual to bring an action for violations of the Consumer Protection Act where potential actual damages are limited. United Laboratories Inc. v. Kuykendall (N.C. 1993), 437 S.E.2d 374, 379 (citing Marshall, 276 S.E.2d at 402); Holley v. Coggin Pontiac, Inc. (N.C. Ct. App. 1979), 259 S.E.2d 1, 5 (North Carolina's treble damage statute differs from Montana's in that if a jury awards compensatory damages, the imposition of treble damages is mandatory).

¶22 A review of the many consumer protection acts enacted by other jurisdictions reveals that an award of multiple or treble damages generally falls into three broad categories. First, there are a few state consumer protection acts that provide that the imposition of treble damages is mandatory once a jury has determined that the act was violated. Lettenmaier v. Lube Connection, Inc. (N.J. 1999), 741 A.2d 591, 594 (citing N.J. Stat. Ann. § 56:8-19 (2002)); *see also* Pinehurst, Inc. v. O'Leary Bros. Realty, Inc. (N.C. 1986), 338 S.E.2d 918, 924 (citing N.C. Gen. Stat. § 75-16 (1985)). Second, some allow a treble damage award if there is a finding by the court of willful, knowing, or intentional conduct in violating the act. Whelihan v. Markowski (Mass. 1994), 638 N.E.2d 927, 929 (citing Mass. Gen. Laws ch. 93A, § 9; *see also* ATS Southeast, Inc. v. Carrier Corp. (Tenn. 2000), 18 S.W.3d 626, 627 (citing Tenn. Code Ann. § 47-18-109). Third, distinct minorities of consumer protection acts allow for a purely discretionary award of treble damages. Section 30-14-133(1), MCA.

¶23    Awarding treble damages under Montana's Consumer Protection Act is purely a discretionary function of the district court and differs from many other states which allow discretionary treble damage awards but, in doing so, define specific criteria to guide the trial court in the award of treble damages.  For example, under Alabama's Consumer Protection Act, the trial court must consider several relevant factors in making the treble damage determination:  (1) the amount of actual damages awarded; (2) the frequency of the unlawful acts or practices; (3) the number of persons affected thereby; and (4) the extent to which the unlawful acts or practices were committed intentionally.  Ala. Code § 8-19-10(a)(2).

¶24    A majority of those states with consumer protection acts which allow private causes of actions has determined that it is acceptable to allow either treble damages or exemplary damages under a common law claim, but not both.  It is generally accepted that the plaintiff bringing a consumer protection act claim cannot recover both exemplary and treble damages, as the courts have construed this as double recovery. Hale v. Basin Motor Co. (N.M. 1990), 795 P.2d 1006, 1012; *see also* Hall v. Walter (Colo. 1998), 969 P.2d 224, 229 (citing Lexton-Ancira Real Estate Fund v. Heller (Colo. 1992), 826 P.2d 819, 822-23).

¶25  Other jurisdictions interpreting their consumer protection acts have distinguished multiple or treble damages from punitive damage awards by noting that although the trebling function has a deterrent effect, it is used primarily as a compensatory measure, and thus is not intended to be punitive.  *See for example* Phelps

**v. Commonwealth Land Title Ins.** (Minn. 1995), 537 N.W.2d 271, 277 (the Minnesota Act specifically provides within the body of the statute that treble damages are compensatory); *see also* **Zanakis-Pico v. Cutter Dodge, Inc.** (Haw. 2002), 47 P.3d 1222, 1232 (Hawaii's Consumer Protection Act, HRS § 480-13(b), allows for treble compensatory damages but no punitive damages).

¶26    This Court has previously held that the provisions of § 30-14-133, MCA, do not require a plaintiff to prove malice, oppression, or fraud, which under Montana law is prerequisite conduct necessary to allowing punitive damages. **T&W Chevrolet**, 196 Mont. at 293, 641 P.2d at 1371. There is nothing within the language used in § 30-14-133(1), MCA, that would lead this Court to conclude that the Legislature intended that the trebling of damages under the Consumer Protection Act is punitive, rather than compensatory or remedial, in nature. In construing a statute, this Court must simply ascertain and declare what is in terms or in substance contained therein, not inserting what has been omitted or omitting what has been inserted. *See* § 1-2-101, MCA.

¶27    This Court concludes that the Montana Legislature's intent in drafting Montana's Consumer Protection Act without including specific conduct that would trigger imposition of the treble damage award was to provide for a discretionary award of treble damages which is not punitive in nature and which does not require specific intentional conduct on the part of the defendant. Thus, the Court concludes that the treble damage award under Montana's Consumer Protection Act is intended to be compensatory and remedial rather than punitive. ¶28    The District Court erred

11

when it ruled treble damages would not be awarded because the evidence did not support a finding generally associated with punitive damages. The purpose of the trebling provision of the Montana Consumer Protection Act is to promote or encourage private individuals to pursue violations of Montana's Consumer Protection Act by making it more economically feasible to pursue those claims where actual damages are minimal. Montana's treble damages provision is purely a discretionary function of the district court and such awards should be determined on a case-by-case basis. A district court decision whether or not to award treble damages under the Act should be guided by the overall purpose of the Act itself, which is to protect the public from unfair or deceptive practices engaged in by trade or commerce. The specific purpose of the treble damage provision is to encourage consumers to bring these civil actions by making it more economically feasible.

¶29 Based upon the foregoing, the issue of treble damages is remanded to the District Court for proceedings consistent with this opinion.

¶30 Issue No. 2. Did the District Court abuse its discretion in its consideration and award of only a portion of the attorney fees requested by the Plaths under the Consumer Protection Act?

¶31 After the trial, the District Court conducted a hearing on Schonrock's motion for offset and upon the Plaths' motion for treble damages and attorney fees. At the hearing, the District Court informed the parties that it would not take testimony at that time on the attorney fee issue; rather, if an order was subsequently entered awarding

12

the Plaths their attorney fees, Schonrock would be given the opportunity to file an objection to the existing affidavit in support of attorney fees and, if necessary, an evidentiary hearing would be conducted. There is no record that a second evidentiary hearing to determine the reasonableness of attorney fees was conducted.

¶32 In an order issued September 29, 1999, the District Court determined that an award of attorney fees pursuant to the Consumer Protection Act was warranted. The Court granted the Plaths only $10,000 in attorney fees rather than the $55,000 requested and stated that all of the Plaths' claims centered around the water well and therefore had a common core of facts. The District Court reasoned that because the jury award was only $24,609.70, an award of $10,000 in attorney fees was reasonable. The District Court relied upon the "significance of overall relief" factor cited in Audit Services v. Frontier-West, Inc. (1992), 252 Mont. 142, 154, 827 P.2d 1242, 1250, in reaching this conclusion.

¶33 The Plaths argue on appeal that the District Court erred by: (1) addressing only the "results obtained" factor set forth in Audit Services, 252 Mont. at 153, 827 P.2d at 1250; (2) failing to consider all the factors for determining reasonableness of an attorney fee award set forth in Morning Star Enterprises v. R.H. Grover (1991), 247 Mont. 105, 113, 805 P.2d 553, 558, and Swenson v. Janke (1995), 274 Mont. 354, 361, 908 P.2d 678, 682-83; and (3) failing to allow the parties to present evidence by witness testimony related to the seven-factor test.

13

¶34 Schonrock responds that the award of attorney fees pursuant to § 30-14-133(3), MCA, is discretionary, and that an important consideration in determining fees is the ultimate result that was obtained for the Plaths. Schonrock also argues that the affidavit filed in support of the attorney fees does not differentiate fees for services provided in connection with the Consumer Protection Act claim from fees on the other pending claims, and that under the provisions of the contingency agreement, the Plaths executed with their attorneys an award of attorney fees based upon 40% of the jury verdict which would result in a fee of approximately $9,000.

¶35 Section 30-14-133(3), MCA, provides for the discretionary award of attorney fees in individual actions brought under Montana's Consumer Protection Act by stating "the court may award the prevailing party reasonable attorney fees incurred in prosecuting or defending the action." The jury apportioned $22,321.70 of the damages awarded to the Plaths under the Consumer Protection Act claim and the District Court considered the Plaths the prevailing party.

¶36 The reasonableness of attorney fees must be ascertained under the facts of each case. Morning Star Enterprises, 247 Mont. at 114, 805 P.2d at 558 (citing Carkeek v. Ayer (1980), 188 Mont. 345, 613 P.2d 1013). This Court has stated that in determining what constitutes reasonable attorney fees, the following factors should be considered as guidelines: (1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be

14

affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys. Swenson, 274 Mont. at 361, 908 P.2d at 682-83; *see also* Majers v. Shining Mountains (1988), 230 Mont. 373, 379-80, 750 P.2d 449, 453; Carkeek, 188 Mont. at 347, 613 P.2d at 1015; First Security Bank of Bozeman v. Tholkes (1976), 169 Mont. 422, 429-30, 547 P.2d 1328, 1332. These guidelines are not exclusive; the trial court may consider other factors as well. Morning Star Enterprises, 247 Mont. at 113, 805 P.2d at 558.

¶37 The District Court focused almost exclusively on the significance of the overall relief obtained and used the "lodestar multiplier" approach discussed in Audit Services. Audit Services was a case involving ERISA and this Court noted that the "lodestar multiplier" method was determined by the Ninth Circuit Court of Appeals to be the correct method of calculating the amount of attorney fees under a ERISA claim. In Audit Services, this Court approved the practice of placing particular importance on the "result obtained" factor under appropriate circumstances. The "result obtained" factor may be the dominate consideration when a party is deemed prevailing even though the party succeeded on only some of the claims for relief. If a party's claims involve a common core of facts or are based on related legal theories, and it would be too difficult to divide hours expended on a claim-by-claim basis, then the court may focus on the significance of the overall relief obtained in relation to the hours reasonably expended on the litigation. Audit Services, 252 Mont. at 154, 827 P.2d at

15

1250 (citing <u>Hensley v. Eckerhart</u> (1983), 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40). In <u>Audit Services</u>, we approved the attorney fee award because the district court held an evidentiary hearing and substantially complied with consideration of the factors required by the lodestar calculation.

¶38 However, in most cases, the "result" factor is only one of the factors that the district court should weigh in arriving at a reasonable fee. <u>Western Media, Inc. v. Merrick</u> (1988), 232 Mont. 480, 483-84, 757 P.2d 1308, 1310-11. In the instant case, the District Court did not consider the seven factors required by <u>Swenson</u> and did not allow evidence to be introduced to demonstrate the proper amount of attorney fees.

¶39 This Court has repeatedly held that a district court's granting of attorney fees should be based on the introduction of competent evidence:

> "[I]n contested cases we are inclined to follow those states requiring the introduction of proof from which a reasonable fee may be determined. *To award a fee in such a case without proof would be to disregard the fundamental rules of evidence. An award of fees, like any other award, must be based on competent evidence. See Lyle v. Lyle* (Fla.App. 1964), 167 So.2d 256, 257. Furthermore, the proper determination of a legal fee is central to the efficient administration of justice *and the maintenance of public confidence in the bench and bar*."
>
> (Emphasis added.) *Crncevich v. Georgetown Recreation Corp.* (1975), 168 Mont. 113, 120, 541 P.2d 56, 59; *see also First Security Bank of Bozeman v. Tholkes* (1976), 169 Mont. 422, 429-430, 547 P.2d 1328, 1332[.]

<u>Bink v. First Bank West, Great Falls, Inc.</u> (1991), 246 Mont. 414, 415-16, 804 P.2d 384, 385. ¶40 We have repeatedly held that what constitutes reasonable attorney fees is a discretionary task for the district court, and this Court will not disturb its judgment in

16

the absence of an abuse of that discretion. <u>Morning Star Enterprises</u>, 247 Mont. at 114, 805 P.2d at 559; *see also* <u>DeVoe v. Gust. Lagerquist & Sons, Inc.</u> (1990), 244 Mont. 141, 146, 796 P.2d 579, 582; <u>Majers</u>, 230 Mont. at 380, 750 P.2d at 453. However, in the absence of a record that contains evidence of the factors which must be considered and articulated reasons for the District Court's award of attorney fees, we cannot review the court's decision.

¶41 We conclude that the District Court abused its discretion in ordering partial attorney fees because the award of attorney fees is not supported by competent evidence established as the result of an evidentiary hearing. Accordingly, although we affirm the District Court's discretionary decision to grant attorney fees pursuant to the provisions of § 30-14-133(3), MCA, we reverse the District Court's order of attorney fees in the amount of $10,000 and remand the cause for an evidentiary hearing by the District Court for the determination of reasonable attorney fees in accordance with the requirements of <u>Swenson</u>, 274 Mont. at 361, 908 P.2d at 682-83.

¶42 Issue No. 3. Did the District Court err when it overruled the Plaths' objections to the introduction of evidence with regard to their over-collection claim, and when it subsequently denied the Plaths' motion for judgment as a matter of law on the $1,441 over-collection claim?

¶43 The Plaths alleged in their third amended complaint that Schonrock failed to make a downward adjustment in the price of the house and that he subsequently over-

collected $3,383.30. Schonrock counterclaimed alleging that the Plaths owed him in excess of $3,800 for services related to the construction of the house.

¶44   The Plaths later stipulated in their written contentions in the pretrial order that their claimed amount of overcharges was $1,441. The Plaths' contention number 8 in the pretrial order specifically provides:

> 8. Defendant over-collected from the Plaths and represented to them that he would make monetary adjustments in favor of the Plaths as soon as he had the correct figures. Defendant failed to compute such amounts or reimburse the Plaths for his over-billing and collection of money in the amount of $1441; and Defendant has failed to provide a full, complete and accurate accounting that showed costs and adjustments on the Plath contract.

¶45   The Plaths' issues of fact numbers 11 and 12 in the pretrial order, which they contend remained to be litigated at trial, specifically provided:

> 11. Whether Defendant collected from the Plaintiffs more money than Defendant was legally entitled to collect.

> 12. If Defendant did collect from Plaintiffs more money than Defendant was legally entitled to collect, the amount of damages as a result thereof including interest thereon.

¶46   Schonrock's written contention number 7 in the final pretrial order provided:

> 7. Mark Schonrock agrees he owes the Plaintiffs $1,441 for changes made during the course of construction.

¶47   The Plaths claim that this contention constitutes a judicial admission. The Plaths argue that Schonrock was allowed to introduce evidence at the time of trial contrary to this judicial admission and that Schonrock did not claim an affirmative defense of setoff

18

with regard to this claim, which is a requirement in order to present evidence concerning this defense. <u>Travelers Indem. Co. v. Andersen</u>, 1999 MT 201, ¶ 34, 295 Mont. 438, ¶ 34, 983 P.2d 999, ¶ 34; <u>Workman v. McIntyre Const. Co.</u> (1980), 190 Mont. 5, 11-12, 617 P.2d 1281, 1285. The Plaths allege that the District Court abused its discretion in allowing Schonrock to introduce evidence at the time of trial supporting a set-off defense.

¶48 Schonrock responds that when the pretrial order was drafted, he had decided not to pursue his counterclaim, and although in his contentions he agreed that he owed the Plaths $1,441, this was not an admission. Schonrock claims he intended it to be an acknowledgement of a credit against what the Plaths owed him and he fully intended to introduce testimony at the time of trial to rebut the over-collection claim. The District Court determined that there was conflicting evidence on this issue and the jury should be allowed to resolve the issue.

¶49 In order for a judicial admission to be binding upon a party, the admission must be "an unequivocal statement of fact" rather than a conclusion of law or the expression of an opinion. <u>DeMars v. Carlstrom</u> (1997), 285 Mont. 334, 337-38, 948 P.2d 246, 248-49. "The policy underlying the 'unequivocal' standard is . . . because of the . . . finality which results from the application of the doctrine, [and therefore], it must be applied with caution and a degree of skepticism." <u>Conagra, Inc. v. Nierenberg</u>, 2000 MT 213, ¶ 43, 301 Mont. 55, ¶ 43, 7 P.3d 369, ¶ 43 (citing <u>A.T. Klemens & Son v. Reber Plumbing and Heating Co.</u> (1961), 139 Mont. 115, 360 P.2d 1005).

¶50    Schonrock's contention number 7 is an admission that he owed the Plaths $1,441 for changes made during the course of the construction.  It does not say that the matter is closed to the extent that the sum cannot be used as an offset.  In Nentwig v. United Industry, Inc. (1992), 256 Mont. 134, 139, 845 P.2d 99, 102-03, we cited with approval the holding of Manbeck v. Ostrowski (D.C. Cir. 1967), 384 F.2d 970, 975, *cert. denied* 390 U.S. 966, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968):

> "[W]hile the pre-trial order may be the beginning, it is never the end of a matter of this sort.  It normally 'controls the subsequent course of the action,' but not if it is 'modified at the trial to prevent manifest injustice.'  The judicial function does not terminate upon discovery that an issue is unspecified, but extends to a determination as to whether the ends of justice implore that the issue nonetheless be introduced into the litigation.  This frequently involves a delicate balance of competing considerations, variable from case to case, in order that the decision may be soundly made.  And absent perceptible irregularity in a process so largely discretionary, we are loath to disturb the result."

¶51    In the instant case, the District Court did not allow Schonrock to withdraw the admission that $1,441 was owed for construction changes.  Rather, it concluded there was conflicting evidence on the issue and allowed the matter to go to the jury.  We do not find an abuse of discretion.  This Court concludes that the District Court did not err when it overruled the Plaths' objection to the introduction of evidence with regard to the over-collection claim and when it subsequently denied the Plaths' motion for judgment as a matter of law in the amount of $1,441.

¶52    Issue No. 4.  Did the District Court err when it instructed the jury that Mark J. Schonrock, d/b/a Precision Design Group, was involved in a trade or commerce in his

20

dealings with the Plaths by failing to submit this issue for a factual determination by the jury?

¶53    Schonrock argues that he objected to the Plaths' proposed jury instruction number 5 because the determination of whether he was engaged in a trade or commerce was a fact question for the jury.

¶54    The District Court overruled Schonrock's objection and gave the following instruction, Number 5:

> You are instructed that the Defendant, Mark Schonrock, was involved in a trade and commerce in all of his dealings with the Plaths.

¶55    As stated *supra*, a legal theory or factual issue must be at least implicitly included in the pretrial order.  Nentwig, 256 Mont. at 139, 845 P.2d at 102 (citing United States v. First Nat'l Bank of Circle (9th  Cir. 1981), 652 F.2d 882, 886; ACORN v. City of Phoenix (9th Cir. 1986), 798 F.2d 1260, 1272).  The failure to raise a factual issue or legal theory in the pretrial order may result in a waiver.  *See* Nentwig, 256 Mont. at 138, 845 P.2d at 102 (citing Har-Win, Inc. v. Consolidated Grain & Barge Co. (5th Cir. 1986), 794 F.2d 985; Miles v. Tennessee River Pulp & Paper Co. (11th Cir. 1989), 862 F.2d 1525).

¶56    The final pretrial order in this case does not contain any factual issue, legal theory or defense that Schonrock was contesting the application of the Consumer Protection Act based upon an allegation that his construction business was not engaged in a trade or commerce.  Schonrock waived this theory or defense by not including it in

the final pretrial order as an issue of fact to be determined by the trier of fact at the time of trial.

¶57 Section 30-14-102(6), MCA, specifically defines trade or commerce as "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever located, and includes any trade or commerce directly or indirectly affecting the people of this state."

¶58 The agreed facts in the pretrial order provide that Schonrock was a resident of Montana "doing business under the name of Precision Design Group," and that on April 15, 1993, he entered into a contract with the Plaths "for the construction of a new home." The agreed facts in the pretrial order support a determination that Schonrock was engaged in "trade or commerce" within the meaning of the act.

¶59 The District Court did not err when it instructed the jury that Mark J. Schonrock, d/b/a Precision Design Group, was involved in a trade or commerce in its dealings with the Plaths. ¶60 Issue No. 5. Did the District Court err when it denied Schonrock's motion for an $8,000 offset representing a settlement paid by Co-Defendant Ed Boland, d/b/a Boland Drilling Company?

¶61 On March 7, 1997, the Plaths and Ed Boland, d/b/a Boland Drilling Company, entered into a settlement and release agreement. The parties agreed to apportion the full amount of the settlement proceeds to the Plaths' claim for emotional distress. Boland was dismissed from this action.

22

¶62    The Plaths and Schonrock proceeded to trial on pending claims in the third amended complaint.  The jury returned a verdict that Schonrock did not negligently inflict emotional distress on the Plaths.

¶63    After trial, Schonrock moved for an offset for the full amount of the Boland/Plath settlement agreement.  The District Court denied the motion holding that the settlement agreement specifically allocated proceeds to the emotional distress claim.  The District Court reasoned that since the jury verdict returned a damage award based primarily upon damages sustained by the Plaths on the Consumer Protection Act claim, and a Consumer Protection Act claim was never alleged against Boland, Schonrock was not entitled to an offset of an emotional distress settlement against a verdict based on a Consumer Protection Act claim.

¶64    On appeal, Schonrock argues that a district court is not bound by any apportionment of liability to a specific claim contained in a settlement agreement citing our decision in Swanson v. Champion Intern. Corp. (1982), 197 Mont. 509, 646 P.2d 1166; therefore, the court is not bound by the settlement agreement which allocated liability to the emotional distress claim.  Schonrock argues that the Plaths specifically allocated liability under the settlement agreement to the emotional distress claims in order to avoid offset.

¶65    The Plaths argue that Schonrock and Boland were not joint tort-feasors causing one concurrent injury and that the damage awarded by the jury and the allocation of liability in the settlement agreement were given for separate and distinct injuries which

23

resulted from independent acts. The Plaths cite our decision in Jim's Excavating Service v. KHM Assoc. (1994), 265 Mont. 494, 514-15, 878 P.2d 248, 260-61, as controlling.

¶66    Our decision in Swanson on allocation does not control this issue. In Swanson, an estate representative's husband died in a plane crash while on the job. The insurer, which carried workers' compensation insurance for the employer of the deceased, paid the estate representative a benefit. The estate representative then settled a survivor and wrongful death action with the owner of the airplane. The insurer sought subrogation rights in the settlement. This Court held that the subrogation rights of an insurer under the Workers' Compensation Act did not extend to recoveries made under wrongful death claims, because the damages are personal to the survivors. Damages recoverable in a survivorship action are subject to subrogation because the damages are personal to the decedent. In cases of instantaneous death, an insurer's subrogation lien extended to the portion of a wrongful death recovery that represented reasonable contributions to the heirs derived from the earnings of the decedent. We concluded in Swanson that when subrogation is considered, the courts should not be bound by allocations made between private counsel. Our decision in Swanson on allocation is limited to the facts and the legal theories that were presented in that case.

¶67    Our recent holding in Schuff v. A.T. Klemens & Son, 2000 MT 357, ¶ 104, 303 Mont. 274, ¶ 104, 16 P.3d 1002, ¶ 104, controls this issue. In Schuff we held:

24

The principle of *pro tanto* reduction provides that "when a joint tort-feasor settles with a claimant, the claimant's recovery against the remaining tort-feasor is to be reduced dollar-for-dollar by the consideration paid by the settling tort-feasor." *Boyken v. Steele* (1993), 256 Mont. 419, 421, 847 P.2d 282, 284 (citations omitted). The *pro tanto* rule applies only if two or more concurrent or joint tortfeasors cause a single "indivisible" harm. See *Jim's Excavating Serv., Inc. v. HKM Associates* (1994), 265 Mont. 494, 514, 878 P.2d 248, 250; *Azure v. City of Billings* (1979), 182 Mont. 234, 248, 596 P.2d 460, 468[.]

¶68 Our decision in Jim's Excavating Service is instructive. The litigation in that case arose out of the construction of a water transmission pipeline for the Lockwood Water Users Association (LWUA). LWUA retained the services of HKM Associates (HKM), a Billings based engineering firm, to design the plans and specifications for the project. HKM also acted as a project engineer through the entire project, from design stage to completion. Jim's Excavating Service, Inc. (JES), a Billings construction contractor, was the low bidder on the project, and LWUA awarded the contract to JES. The contract required JES to construct a water transmission main using 16-inch and 24-inch pipe. JES purchased the pipe from J-M Manufacturing Company (J-M). Construction began on the project, and during the spring of 1986, construction stopped because JES was informed by J-M that the pipe could not be deflected and fittings were needed. After numerous delays in completing the project, HKM inspected the fittings that were placed and found that the cement linings of the fittings were cracked and had to be replaced. Jim's Excavating Service, 265 Mont. at 498-99, 878 P.2d at 250-51.

¶69 JES filed a complaint against HKM and LWUA alleging various alternative theories of recovery. LWUA counter-claimed against JES, and JES filed a third-party

25

complaint against J-M requesting indemnification. Prior to trial, JES entered into a settlement agreement with LWUA and a separate settlement agreement with J-M. Thereafter, JES amended its complaint against the remaining defendant, HKM, alleging that JES's damages were the result of HKM's negligent design. The jury returned a verdict in JES's favor. After trial, HKM moved for pro tanto reduction of the jury verdict based upon the settlement agreements. The district court denied the motions, and HKM appealed. Jim's Excavating Service, 265 Mont. at 500-01, 878 P.2d at 251-52.

¶70    In Jim's Excavating Service we determined that HKM was not entitled to a pro tanto reduction for JES's settlement with J-M because JES sustained separate and distinct injuries as a result of HKM's independent acts. A jury found HKM negligent for failing to adequately prepare plans and specifications with regard to a water pipeline project. The settlement proceeds from J-M were allocated to payment for delivery of defective pipes, which resulted in JES's incurrence of additional expenses in repairing leaks caused by the use of the defective materials. Jim's Excavating Service is similar to the case at bar because, although all claims in that case were the result of the construction of the water transmission pipeline, the specific claims against each defendant were separate and distinct. Jim's Excavating Service, 265 Mont. at 514-15, 878 P.2d at 260-61.

¶71    In the present case, the jury award of damages for the Plaths was based almost entirely upon Schonrock's violation of the Montana Consumer Protection Act. Thus,

the damages awarded by the jury were based upon Schonrock's deceptive acts or practices in the conduct of his business with regard to his representations of fact and his failure to disclose facts to the Plaths regarding the construction of their home and well.

¶72    In contrast, the Boland settlement proceeds were allocated completely to the emotional distress claims.  The liability that flowed from the settlement agreement was based upon Boland's actual construction of the well that produced the tainted water.  A claim of violations of the Consumer Protection Act was never leveled against Boland.

¶73    The award of damages by the jury and the settlement proceeds were the result of separate and distinct injuries.  We conclude that the District Court did not err in concluding that Schonrock was not entitled to an offset of the settlement proceeds.

¶74    Therefore, we affirm in part, and reverse in part, and remand to the District Court for proceedings consistent with this opinion.

/S/ DOUGLAS G. HARKIN
District Court Judge Douglas G. Harkin
sitting for Justice Patricia O. Cotter

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER

Justice Jim Rice concurring in part and dissenting in part.

¶75    I concur with the Court except for its holding in Issue 3 that the District Court did not err in allowing Schonrock to introduce evidence in regard to Plaths' over-collection claim. In its analysis of this issue, and of the similar question addressed in Issue 4, the Court correctly cites to the controlling authority, but in my view fails to properly apply this authority in deciding Issue 3.

¶76  Schonrock's contention number 7 in the pre-trial order clearly stated that Schonrock "agrees he owes the Plaintiffs $1,441 for changes made during the course of construction." This admission against Schonrock's own interest could not have been a more "unequivocal" statement of fact, and therefore, met the standard for binding admissions which the Court applies from *DeMars v. Carlstrom*.

¶77  However, the Court finds in ¶ 50 that this admission "does not say that the matter is closed to the extent that the sum cannot be used as an offset." Relying on *Nentwig v. United Industry, Inc.*, the Court reasons that the District Court did not abuse its discretion because the question of what issues are to be decided at trial "extends to a determination as to whether the ends of justice implore that the issue nonetheless be introduced into the litigation," even if the issue was not specified in the pre-trial order.

¶78  We emphasized in *Nentwig* that "the pretrial order 'should be liberally construed to permit any issues at trial that are "embraced within its language."' . . . But the theory or issue

28

must be at least implicitly included in the pretrial order." *Nentwig*, 256 Mont. at 139, 845 P.2d at 102. We further emphasized that "failure to raise an issue in the pretrial order may result in a waiver." *Nentwig*, 256 Mont. at 138, 845 P.2d at 102. The *Nentwig* Court affirmed the District Court's insertion of an issue in the trial because "the issue was implicit in those raised," and was thus embraced within the language of the pre-trial order. *Nentwig*, 256 Mont. at 140, 845 P.2d at 103. The same cannot be said for the issue raised in the trial here.

¶79 As the Court acknowledges, Schonrock had decided not to pursue his counterclaim against Plaths when the pre-trial order was drafted and signed. He thus failed to claim setoff as an affirmative defense in the pre-trial order, as required. Because the defense was neither embraced within the language nor otherwise implicit within the pre-trial order, Schonrock waived the issue. *Nentwig*, 256 Mont. at 139-40, 845 P.2d at 102-03.

¶80 The Court's reasoning on Issue 4 is correctly premised upon our authority: "Schonrock waived this theory or defense by not including it in the final pretrial order as an issue of fact to be determined by the trier of fact at the time of the trial." *See* ¶ 56. I would likewise apply this sound reasoning to Issue 3 and reverse on this issue. I dissent from our failure to do so.

/S/ JIM RICE

Justice Terry N. Trieweiler and Justice James C. Nelson join in the foregoing concurring and dissenting opinion of Justice Rice.

/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON