No. 92-297

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

DEBBIE NENTWIG,

      Plaintiff and Appellant,

  -vs-

UNITED INDUSTRY, INC.,

      Defendant and Respondent.

FILED

DEC 3 0 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         W. Scott Green, Attorney at Law, Billings, Montana

      For Respondent:

         Earl J. Hanson, Attorney at Law, Billings, Montana

Submitted on Briefs:  October 22, 1992

Decided:  December 30, 1992

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Thirteenth Judicial District, Yellowstone County, the Honorable Robert W. Holmstrom presiding. Appellant Debbie Nentwig (Nentwig) appeals from the entry of summary judgment in favor of respondent United Industry, Inc. (United) on her claims of breach of contract and fraud. We affirm.

The following issues are raised on appeal:

1. Did the District Court abuse its discretion by raising an issue that was not in the pretrial order?

2. Did the District Court err in granting summary judgment in favor of United?

3. Did the District Court err in refusing to grant summary judgment in favor of Nentwig?

Nentwig and her then partner, Jill Murphy, entered into a lease dated October 21, 1982, to rent approximately 271 square feet of space in the Transwestern I building (TWI) in Billings. The term of the lease was December 15, 1982 to December 14, 1985. The purpose of the lease was to provide a location for their hair styling salon. Nentwig dealt with Jeff Shoop who was a managing partner in TW Partnership, the owner of TWI, and with Larry Nitz who worked for the firm that managed TWI for the partnership.

In October 1985, Nentwig and Murphy dissolved their partnership. Also in October 1985, Nitz delivered to Nentwig a copy of a lease for another three years because the original lease was due to expire in December of that year. This new lease (the 1985 lease) expired on October 31, 1988. Nentwig signed this lease

2

and added a letter that read:

> I am herewith delivering an executed Office Lease Agreement pertaining to the space I am leasing for "A Touch of Class" barbershop. It is my understanding that if you cancel this lease after October 31, 1987, you will provide me with alternative space in the TW Plaza and will pay me some amount to be agreed upon for relocation costs and for leasehold improvements. I understand that you do not want to have this put in writing in the lease but I do want you to know what my understanding is in the event you elect to terminate the lease after October 31, 1987. As you know, I have had to buy out my ex-partner, Jill Murphy, and in doing so I had to obtain a substantial loan which will not be paid off until after October 31, 1987. Therefore, it is extremely important to me that I know that I have space available to me down the road and that I will not be required to spend additional money for leasehold improvements, etc. If this letter does not reflect our understanding, please let me know as soon as possible.

She returned the lease and the letter to Nitz who then passed it on to Jeff Shoop for execution by TW Partnership. However, no executed copy was produced, and Shoop and Nitz allege that it never was executed. In fact, Shoop and Nitz testified in their depositions that they told Nentwig that the long term lease would not be signed until another tenant, Mutual of New York, decided whether it wanted to expand into her area of the building. They claim to have told her that the lease was not signed. However, Nentwig claims that she was under the impression the lease had been signed and that she was never given any indication that it was not, or would not be, signed. She does admit in her deposition that Nitz never told her or led her to believe that Shoop had physically signed the document.

Nentwig remained in the building and continued to pay rent after the original lease expired in December 1985.

3

In July 1986, TW Partnership, as part of the sale of the building, assigned its leases and rents in TWI to United, from whom it had bought TWI originally. Appended to the assignment was a list entitled "Transwestern 1 Leases," which included Nentwig's salon. Nitz remained as manager of the TWI property.

In December 1986, Nitz sent a letter to all TWI tenants, including Nentwig, which stated:

> All office space leases between Transwestern 1 Tenants and TW Partnership have been assigned to United Industry, Inc. Here is a copy of the Assignment document for your files. If you have a written lease, this document should be attached to it.

In July 1988, Nentwig sent a letter to Nitz informing him that she desired to exercise an option to renew her lease, which was contained in the 1985 lease. United's general counsel denied Nentwig's request on the basis that the 1985 lease had never been signed on the lessor's behalf, therefore she had no option to exercise. Counsel informed Nentwig that she had a month-to-month lease after United took back the property. The letter informed Nentwig that the building would undergo extensive remodelling and that her tenancy was terminated effective October 31, 1988. We note that this is the date the 1985 lease expired under its own terms anyway.

Nentwig then sued United for breach of contract for failing to allow her to renew the lease, provide alternative space, pay relocation costs, and reimburse her for improvements. Later she filed an amended complaint asserting that her claim was not barred by the Statute of Frauds and alleging part performance, equitable

4

estoppel, promissory estoppel, and fraud. She was again allowed to amend her complaint to allege breach of the implied covenant of good faith and fair dealing.

A pretrial conference was held September 13, 1991, at which time the attorneys and the judge signed a pretrial order. On the day of trial, the court held a conference in chambers where Nentwig's counsel informed the court that he was relying on the option provision contained in the 1985 lease. The judge then informed the parties that his independent research in preparing for trial led him to two Montana cases, Riis v. Day (1980), 188 Mont. 253, 613 P.2d 696, and Drug Fair Northwest v. Hooper Enters., Inc. (1987), 226 Mont. 31, 733 P.2d 1285, which he felt controlled the issues in this case. He informed the parties that the option clause in the 1985 lease might be void for vagueness or indefiniteness under the holdings in those cases. He recognized that the issue had not been raised in the pleadings, in the motions for summary judgment, in the pretrial order, or in the parties' trial briefs. He gave United fifteen days to file a brief on the issue and to make any motion it deemed appropriate. He gave Nentwig fifteen days to respond, and he gave United five days to reply after that.

Both parties filed briefs and moved for summary judgment. The District Court granted United's motion and denied Nentwig's motion.

I

Did the District court abuse its discretion by raising an issue that was not in the pretrial order?

5

Nentwig asserts that the issue of whether the provision was void for vagueness or indefiniteness had not been raised in a timely fashion, therefore it should be considered waived. The District Court recognized that the issue had not been previously raised, but on the basis of Rule 16, M.R.Civ.P., which provides for modification of the pretrial order to prevent manifest injustice, it determined that it would be best to dismiss the jury and provide the parties an opportunity to argue the issue in briefs.

The District Court reasoned that "the submission to the jury of a case contrary to the law as announced by our Supreme Court would be manifest injustice to one or both of the parties." After considering the alternatives, the court determined that dismissing the jury and allowing the parties to brief the issue was the best procedure to follow.

Nentwig correctly points out that failure to raise an issue in the pretrial order may result in a waiver. Har-Win, Inc. v. Consolidated Grain & Barge Co. (5th Cir. 1986), 794 F.2d 985; Miles v. Tennessee River Pulp & Paper Co. (11th Cir. 1989), 862 F.2d 1525. The purpose of the pretrial order is to prevent surprise, simplify the issues, and permit the parties to prepare for trial. Bache v. Gilden (Mont. 1992), 827 P.2d 817, 819, 49 St.Rep. 203, 204. However, this Court said in Bell v. Richards (1987), 228 Mont. 215, 217, 741 P.2d 788, 790, that the pretrial order "should be liberally construed to permit any issues at trial that are 'embraced within its language.'" (Quoting Miller v. Safeco Title Ins. Co. (9th Cir. 1985), 758 F.2d 364, 368.) But the theory or

6

issue must be at least implicitly included in the pretrial order. United States v. First Nat'l Bank of Circle (9th Cir. 1981), 652 F.2d 882, 886; ACORN v. City of Phoenix (9th Cir. 1986), 798 F.2d 1260, 1272.

In the present case, in chambers before the trial was to begin, Nentwig's counsel informed the District Court that Nentwig intended to rely on a theory that United breached the option clause contained in the 1985 lease. In her contentions listed in the pretrial order, Nentwig raised this issue generally by claiming that United breached the lease. In the "Issues of Law" section of the pretrial order, Nentwig raised the issue of whether options to renew a lease are subject to the Statute of Frauds. United generally denied that it had breached the lease or any contract. In resolving this matter, the judge was required to review the contract, especially the option provision. We feel that Nentwig's reliance on the option provision necessarily carried with it a requirement that the provision be valid.

As the court said in Manbeck v. Ostrowski (D.C. Cir. 1967), 384 F.2d 970, 975, cert. denied, 390 U.S. 966 (1967):

> [W]hile the pre-trial order may be the beginning, it is never the end of a matter of this sort. It normally "controls the subsequent course of the action," but not if it is "modified at the trial to prevent manifest injustice." The judicial function does not terminate upon discovery that an issue is unspecified, but extends to a determination as to whether the ends of justice implore that the issue nonetheless be introduced into the litigation. This frequently involves a delicate balance of competing considerations, variable from case to case, in order that the decision may be soundly made. And absent perceptible irregularity in a process so largely discretionary, we are loath to disturb the result.

7

Although the district court has wide discretion, Manbeck, and the pretrial order is to be viewed liberally, Bell, the district court must be mindful not to prejudice the parties. See Glissman v. AT&T Technologies, Inc. (8th Cir. 1987), 827 F.2d 262. We recently held in Bache that the district court abused its discretion by allowing a witness who had not been listed in the pretrial order to testify at trial. We held that because the respondent had not revealed the information in a timely fashion and the appellant was not given the opportunity to depose the witness, the court had abused its discretion. Bache, 827 P.2d at 819.

In a case similar to the present one, Morris v. Homco Int'l, Inc. (5th Cir. 1988), 853 F.2d 337, the seller of a business brought suit to collect payments under the terms of a non-competition clause. Although the defendant buyer had not raised the issue of substantial performance in his counterclaim or in the pretrial conference, the court, in drafting its opinion a month after trial, injected the doctrine into the case to the defendant's benefit. The appellate court held this was error because the issue had not been raised and the plaintiff had no notice that the issue would be important in the case "until the time had passed to meet the issue squarely." 853 F.2d at 343.

On the other hand, we held that there was no error in Ottersen v. Rubick (1990), 246 Mont. 93, 803 P.2d 1066, where even though certain legal issues had not been set forth specifically in the pretrial order, they had been argued in briefs before the court.

We hold that the District Court did not abuse its discretion

8

by raising the issue of vagueness because it is vested with wide discretion, the issue was implicit in those raised, and the court overcame any prejudice to Nentwig by allowing her a full opportunity to brief the issue. We also note that the court's action did not require Nentwig to develop further facts or present new evidence to make her argument. This was strictly a matter of law.

## II

Did the District Court err in granting summary judgment in favor of United?

United also filed a motion for summary judgment along with its brief on the issue of vagueness. The court granted this motion. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), M.R.Civ.P. On appeal, this Court applies the same standard as that applied by the trial court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24-25, 788 P.2d 892, 894.

We first address the issue of whether the option provision in the lease was void for vagueness or indefiniteness. The provision states, "Lessee shall have an option to renew this Lease for 3 years with rent to be agreed upon by the parties."

The District Court relied on Riis v. Day (1980), 188 Mont. 253, 613 P.2d 696, and Drug Fair Northwest v. Hooper Enters., Inc.

9

(1987), 226 Mont. 31, 733 P.2d 1285, in determining that this clause was void because it was "nothing more than an agreement to agree in the future [and did] not establish a definite mode for the determination of the rent. . . ." Riis is analogous to the present case. In Riis, a two-year lease contained a renewal provision which read in part:

> Lessees are hereby given an exclusive option to renew this Lease and Agreement for an additional two years, under the same terms and provisions as this present Lease and Agreement except that the amount of rental shall be subject to negotiation and mutual agreement between the parties.

613 P.2d at 696-697.

We stated in Riis that generally an agreement must contain all essential terms to be binding upon the parties. 613 P.2d at 697. We then noted that at that time this Court had not ruled on the validity of a renewal provision where the amount of rent was negotiable, and that other jurisdictions were divided on the issue.

In Riis, we looked to Slayter v. Pasley (Or. 1957), 264 P.2d 444, for a discussion of the three prevailing views of the time. The "old rule" requires that the renewal provision specify the term of the lease and the rate of rent with certainty, leaving nothing for future determination. 613 P.2d at 697. The "first minority view" permits enforcement of the provision if it expressly contemplates a clear and definite mode for determining future rent. 613 P.2d at 697. The "liberal view" permits enforcement if the contract shows that the parties mutually agreed to meet in the future and make provisions for reasonable rent. 613 P.2d at 698.

In Riis we said:

10

> We believe the "first minority view" reflects the best standard. It recognizes the business utility of renewal provisions. Such provisions often do provide the inducement for entering the original lease. But, given fluctuating market conditions, the parties cannot fairly determine what would be an adequate rent in the future. At the same time, this standard also adheres to the wisdom of the old rule. It recognizes the danger of courts arbitrarily interpolating provisions into an arm's length transaction to breathe life into an otherwise invalid agreement.

613 P.2d at 698.

We cited Riis extensively in Drug Fair where Drug Fair argued that a letter from the owner of a shopping center in which it was a tenant constituted a lease. The letter provided for four five-year options but did not provide at least a method to determine rent during those periods. We concluded that Drug Fair only had a month-to-month lease. 733 P.2d at 1288.

Nentwig argues that various cases cited in Slayter establish that the first minority view only requires that the language of the lease demand reasonableness or adherence to commercial standards. However, Riis and Drug Fair require more. Although they may be inconsistent with the cases cited in Slayter, we clearly follow Riis and Drug Fair. They require at least a definite mode for determining rent.

Nentwig argues that our decision in Story v. City of Bozeman (1990), 242 Mont. 436, 791 P.2d 767, effectively overrules Riis by providing that "[e]ach party to a contract has a justified expectation that the other will act in a reasonable manner" and that every contract contains an implied covenant of good faith and fair dealing. 791 P.2d at 775. The requirement of reasonableness

11

is not inconsistent with Riis and Drug Fair. These cases, however, require more for the reasons stated in Riis, which we have reproduced above. Anytime a material term is required, one could argue that Story provides a sufficient method of establishing that term by requiring that the parties act reasonably. We refuse to extend Story that far.

The present case illustrates the problem foreseen in Riis. Under the 1982 lease, Nentwig paid $400 per month over the three-year term. Under the 1985 lease, she paid $405 per month. This rent was higher on a per square-foot basis than what the other tenants were paying. They averaged about nine dollars per square-foot during the first lease period and twelve dollars per square-foot during the second period. Nentwig was paying about eighteen dollars per square-foot until her rent was reduced during the second term when United took back the building. In her letter seeking to exercise the option provision, she proposed that the rent be ten dollars per square-foot for a total of $225.83 per month. This is two dollars per square-foot less than she testified Shoop was willing to agree to in the 1985 lease. We point out that the 1982 and 1985 leases both contained a provision that Nentwig would pay $532 per month if she held over after the expiration of the term. Nentwig relies on this term to argue that a price had been fixed in the lease and therefore, the option provision is not vague.

The range of prices evidenced in this case provides a clear example of the problem that the Court in Riis and Drug Fair sought

12

to avoid. The courts must not be forced to provide the material term of rent.

We hold that the District Court did not err in determining that the option clause was void for vagueness when it granted summary judgment.

Nentwig also argues that there was a writing sufficient to satisfy the Statute of Frauds and puts forth several other arguments including an equitable argument that "[t]hat which ought to have been done is to be regarded as done, . . . ." Section 1-3-220, MCA; an argument that the lease was signed because "Transwestern Partnership" was typed above the signature line; an argument that options are not subject to the Statute of Frauds; integration; part performance; and fraud. Because the District Court assumed for the purpose of summary judgment that TW Partnership had signed the lease, therefore eliminating any Statute of Frauds problems Nentwig encountered, we need not address these issues. As we view the facts in the same light as the District Court, we will make the same assumption. McCracken, 788 P.2d at 894.

Nentwig argues that United, as assignee of the leases in TWI, assumed the benefits and burdens of the assignment. As we hold that the option provision was void, there is no burden associated with it.

Further, Nentwig argues that United breached the relocation agreement contained in the letter she included with the 1985 lease. That letter stated:

13

> It is my understanding that if you cancel this lease after October 31, 1987, you will provide me with alternative space in the TW Plaza and will pay me some amount to be agreed upon for relocation costs and for leasehold improvements.

Jeff Shoop admitted in his deposition that he would provide as stated in the letter. However, Nentwig does not assert, nor could it be argued, that the agreement extended beyond the term of the lease to which it was attached. That lease expired by its own terms on October 31, 1988. Nentwig was not forced to relocate between October 31, 1987 and October 31, 1988. Therefore, United did not breach this agreement.

Lastly, Nentwig argues in her brief to this Court that the District Court erred in granting summary judgment to United because United committed fraud. The elements of fraud are: a representation, falsity of the representation, materiality of the representation, the speaker's knowledge of the falsity of the representation or ignorance of the truth, the speaker's intent that it should be relied on, the hearer's ignorance of the falsity, the hearer's reliance upon the representation, the hearer's right to rely on the representation, and consequent and proximate injury caused by reliance on the representation. Lee v. Armstrong (1990), 244 Mont. 289, 293, 798 P.2d 84, 87.

In its Memorandum accompanying the Order, the court stated:

> While there is a genuine issue of material fact as to whether or not the acts of the Defendant and its assignor amounted to fraud, it is clear that Plaintiff did not sustain any damage resulting from the alleged fraud. She asserts that the fraud consisted of representations that the 1985 lease had been signed and that a signed copy would be returned to her, that she was entitled to and did rely upon the representations. However, she was not

14

damaged thereby because she received everything that she was entitled to receive under the 1985 lease. It expired by its own terms on October 31, 1988, and she was permitted to occupy the premises until that date. Further, Defendant, after it acquired the building, reduced her rent by fifty percent (50%) and as testified by one or more of its officials, this would not have occurred had it been known that there was a written lease. Not only did the Plaintiff not sustain any damage but she actually received a benefit from what she claims to be the fraud committed upon her.

In her brief, Nentwig does not dispute the District Court's determination that she was not damaged and in fact received a benefit. We find no evidence on the record otherwise. She received everything to which she was entitled under the 1985 lease. Because the option provision was void, she could have suffered no damages based on it.

We hold that the District Court did not err in granting summary judgment to United.

### III

Did the District Court err in refusing to grant summary judgment in favor of Nentwig?

In its Memorandum, the District Court stated that "[t]he granting of the Defendant's Motion for Summary Judgment of necessity required a denial of the Plaintiff's Motion for Summary Judgment." We agree.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

15

William E Hunter

Karla M Gray

R C McDonough

Justices

16

December 30, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

W. Scott Green
W. SCOTT GREEN, P.C.
301 North 27th Street
Billings, MT 59101

Earl J. Hanson
Attorney at Law
Suites 214-215, Transwestern I
404 North 31st St.
Billings, MT  59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy